IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**EMMA MAYO**,

    Plaintiff,

v.                                        Case No.: 3:21-cv-00471

**CITY OF HUNTINGTON, RICHARD KERN, IN BOTH HIS PERSONAL CAPACITY AND HIS OFFICIAL CAPACITY AS AN OFFICER OF THE HUNTINGTON POLICE DEPARTMENT**,

    Defendants.

# COMPLAINT

COMES NOW the Plaintiff EMMA MAYO, by and through her undersigned counsel, Kenneth P. Hicks, L.C., and for her Complaint against the Defendants, states as follows:

## I. NATURE OF THE CASE

1. This civil rights action challenges as unconstitutional Huntington Police Department (hereinafter "HPD") patrolman Richard Kern's unlawful assault, battery, false imprisonment, and illegal arrest of Plaintiff EMMA MAYO at her residence located at 616 John Marshall Drive, Huntington, West Virginia.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked under 28 U.S.C. §§1343 et. Seq. This action at law for money damages arises under 42 U.S.C. §§1986,1988, the United States Constitution, the law and Constitution of West Virginia and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes

and by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction of Plaintiff's claims for violations of her federal constitutional rights pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because these claims arise out of the same set of facts as the federal claims such that all claims form part of the same case or controversy.

4. Venue lies in this District pursuant to 28 U.S.C. §1381(e) because a substantial part of the events giving rise to the claim occurred in Cabell County, West Virginia which is located in the Southern District of West Virginia.

### III. PARTIES

5. Plaintiff EMMA MAYO was at all times relevant to this Complaint a resident of Cabell County, West Virginia and subject to the unlawful actions of the Defendants. Ms. Mayo was a full time student of Marshall University and a member of the University cheerleading team.

6. Defendant City of Huntington is a municipal corporation established by the laws of West Virginia. Pursuant to West Virginia law, the City created a police force, the Huntington Police Department. HPD is subject to the authority, control and discipline of its administrative authority, the City of Huntington. The City of Huntington is a "person" as that term is defined in 42 U.S.C. § 1983.

7. Defendant Richard Kern is a police officer employed by HPD. He is a "person" within the meaning of 42 U.S.C. §1983 and at all relevant times was acting under color of state law. He is sued in both his individual and official capacity.

## IV. FACTS

8. Emma Mayo is a resident of Huntington, West Virginia.

9. On or about August 24, 2019, EMMA MAYO resided at 616 John Marshall Drive, Huntington, West Virginia.

10. On the evening of August 24, 2019, several fellow Marshall University students and Marshall University cheerleaders were at her residence, both inside and outside of the residence. There were pre-semester parties at many houses situated on John Marshall Drive between 5th and 6th Avenues near Marshall University, which were attended by the incoming and returning Marshall University students.

11. EMMA MAYO, being a Marshall University student and cheerleader, had attended a Marshall University cheerleading clinic on the evening of the incident and returned to her residence about 9:00 p.m. At around 11:24 p.m., EMMA MAYO, who was inside her home, was summoned outside her residence by HPD Officer Richard Kern.

12. When she exited the front door of her residence, EMMA MAYO walked to the end of the porch where Officer Kern reached out and grabbed her by her left arm.

13. EMMA MAYO was stunned and shocked by Officer Kern's immediate act of grabbing her arm. Plaintiff was still standing on the stairs and holding onto the banister with her other hand when Officer Kern reached up and grabbed a handful of her hair, violently jerked her head back, and lead her to the police car by the hair of her head.

14. Plaintiff was then arrested, handcuffed and placed in the HPD cruiser and thereafter taken to the HPD station where she was held in custody until she was released several hours later.

## V. ALLEGATIONS

15. The Huntington Police Department over the last seven to eight years has had several officers like Richard Kern who have engaged in a pattern and practice of civil rights violations. In order to disguise its extensive civil rights violations, these officers have engaged, and continue to engage in, a pattern and practice of suppressing evidence of their illegal actions.

16. Certain HPD officers have suppressed violations and transgressions through a systemic plan of citizen intimidation, censorship and secrecy and several previous incidents have occurred in recent years.

17. For example, in *Pniewski v. City of Huntington, et al.,* Case No.: 3:12-cv-4675, Mr. Pniewski was arrested and harassed for innocently filming an ongoing arrest. After the arrest, the involved HPD officers also seized and erased the video on Mr. Pniewski's camera.

18. In *Xavier and Martin Thomas v. City of Huntington*, et al., 3:31-cv-22159, HPD officers arrested and beat a man for simply watching a traffic stop. When his brother tried to document their illegal actions by recording the incident with his phone, he was handcuffed, illegally searched, and had the video erased from his phone.

19. In *Evans v. City of Huntington, et al.*, 3:13-cv-05316, Nicholas Evans was arrested for DUI even though he had not committed a traffic violation. During his arrest, Mr. Evans was slammed face first into the pavement, knocking out several of his teeth. Although HPD had received a federal grant for video recording capability in their cruisers and the car that pulled over Mr. Evans contained a video camera, no video existed of the illegal stop or arrest.

20. In *Webb v. City of Huntington and Richard Kern*, 3:14-cv-17321, Officer Kern illegally detained, arrested, assaulted and battered a Charleston police officer who was in

Huntington visiting friends when he witnessed Officer Kern conducting a traffic stop on 4th Avenue in downtown Huntington, West Virginia.

21. In this case, EMMA MAYO did not know why she was summoned outside by HPD and, while she was walking down the stairs to speak with Officer Kern, he grabbed her arm and then grabbed her by the hair of her head and forcibly placed in a police cruiser.

## COUNT I
## CIVIL RIGHTS VIOLATIONS

**(Excessive Force - 42 U.S.C. §1983)**

22. Plaintiff refers to and re-pleads each and every preceding allegation of this Complaint, and by this reference incorporates the same herein and make each a part hereof.

23. Any use of force against EMMA MAYO and the degree of force actually used against her, (the violent grabbing her by the hair of the head and forcibly jerking her head back) was objectively unreasonable, excessive and unwarranted and violated the Plaintiff's clearly established rights, which a reasonable and prudent police officer should have known pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and the Constitution of West Virginia.

24. Officer Kern's unprovoked actions were willful, wanton, intentional, malicious and done with callous or reckless disregard for EMMA MAYO's constitutional rights.

## COUNT II
## CIVIL RIGHTS VIOLATION

**(Unlawful Seizure of a Person - 42 U.S.C. §1983)**

25. Plaintiff refers to and re-pleads each and every preceding allegation of this Complaint, and by this reference incorporates the same herein and make each a part hereof.

26. Kern assaulted, seized and detained EMMA MAYO without any lawful justification.

27. Kern's actions were objectively unreasonable, excessive, and unwarranted in violation of Plaintiff's clearly established right to stand on her own property without being seized and/or arrested unless reasonable suspicion existed, that a reasonable officer would have known, pursuant to the Fourth and Fourteen Amendments of the United States Constitution and the Constitution of West Virginia.

28. Kern's actions were willful, wanton, intentional malicious and done with callous or reckless disregard for EMMA MAYO's constitutional rights.

## COUNT III
## MUNICIPAL LIABILITY

29. Plaintiff refers to and re-pleads each and every preceding allegation of this Complaint, and by this reference incorporates the same herein and make each a part hereof.

30. The above-described deprivation of EMMA MAYO's constitutional rights were caused by implementation of customs, policies, or official acts of the Defendant City of Huntington; to wit, among other things: permitting police officers to engage in law enforcement contacts without supervision, failure to adequately train, supervise and discipline its police officers regarding reasonable suspicion, probable cause for an arrest, lawful detention, lawful detention and the proper use of force to effect an investigative detention and/or arrest.

31. The City of Huntington, by these acts and omissions, has exhibited deliberate indifference to the unreasonable risk of the unlawful deprivation of citizens' constitutional rights which its customs and policies pose.

32. Its customs and policies violate the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and its West Virginia Counterparts.

33. The customs, practices and policies of the City of Huntington were the direct and proximate cause of the injuries and constitutional violations of which Plaintiff complains.

## COUNT IV
## STATE LAW CLAIMS

34. Plaintiff refers to and re-pleads each and every preceding allegation of this Complaint, and by this reference incorporates the same herein and make each a part hereof.

35. The above-described actions constitute the following state law claims against Kern:

    A. Illegal and false Imprisonment; and

    B. Assault and Battery.

36. The above-described actions constitute the following state law claims against the City of Huntington:

    A. Negligent Hiring;

    B. Negligent Retention; and,

    C. Negligent Supervision.

## VI. PRAYER FOR RELIEF

Wherefore, based upon the above stated facts, Plaintiff requests the Court to assess:

    A. Compensatory damages against the Defendants in an amount to be determined at trial that will fairly and reasonably compensate her for:

        1. Past, present and future medical, psychological, and psychiatric expenses and lost wages;

  2. Past, present and future pain and suffering, loss of enjoyment of life, annoyance, aggravation and psychological distress; and

  3. Any other compensatory damages to be proven at trial.

 B. Punitive damage in an amount to be determined at trial

  1. Reasonable attorneys' fees and costs;

  2. Any other relief that this Court deems just and fair; and,

  3. All other damages provided by law.

**PLAINTIFF DEMANDS A JURY TRIAL.**

              **EMMA MAYO**

              By Counsel

/s/ Kenneth P. Hicks

Kenneth P. Hicks, Esquire (WV Bar #5063)
KENNETH P. HICKS, L.C.
742 Fourth Avenue
Huntington, WV 25701
Tel. (304) 525-3201
Fax (304) 525-4700
khicks1748@aol.com
*Counsel for Plaintiff*